United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| JGX, INC., ET AL.,<br><br>Plaintiffs,<br><br>v.<br><br>JON HANDLERY, et al.,<br><br>Defendants. | Case No. 17-cv-00287-BLF<br><br>**ORDER GRANTING IN PART WITHOUT LEAVE TO AMEND AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; DENYING DEFENDANTS' MOTION TO STRIKE**<br><br>[Re: ECF 41, 42] |

This trademark infringement action involves a dispute over the property rights to the "LEFTY O'DOUL'S" trademark, which was established as a restaurant in 1958 and quickly became a landmark for residents and tourists alike to view unique baseball memorabilia and have a meal that was promoted as "the best deal on the square." First Amended Complaint ("FAC") ¶ 1, ECF 38. Plaintiffs JGX, Inc., Nick Bovis, Bovis Foods, LLC, and SMTM Technology, LLC, doing business as Lefty O'Doul's (collectively, "Plaintiffs"), allege that they own and have asserted all rights to the LEFTY O'DOUL'S mark in connection with a restaurant and bar displaying sports memorabilia. *Id*. ¶ 9. Plaintiffs bring this action to enforce those rights against Defendants Jon Handlery, Handlery Hotels, Sam Singer, and Singer Associates, Inc. (collectively, "Defendants") for the alleged unauthorized use, or imminent use, of the LEFTY O'DOUL'S trademark.

The Court previously granted Defendants' motion to dismiss the original complaint in this action, finding that Plaintiffs had failed to adequately allege actionable use of the LEFTY O'DOUL'S mark by any of the Defendants. *See* ECF 34. Leave to amend was granted in order for Plaintiffs to allege that Defendants actually, or imminently will, use the mark in commerce. *Id*.

at 2. The Court also dismissed the claims against Jon Handley, Sam Singer, and Singer Associates, Inc. with leave to amend on the grounds that the complaint failed to allege misconduct attributable to them in their individual capacities rather than in their capacities as representatives of Defendant Handlery Hotels. *Id*. at 3.

Plaintiffs filed the FAC on September 15, 2017. Defendants filed a motion to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as a motion to strike certain allegations in the FAC pursuant to Rule 12(f). *See* ECF 41 ("Motion to Strike"); ECF 42 ("MTD"). The Court heard oral argument on both motions on February 1, 2018. For the reasons that follow, as well as those stated on the record at the hearing, Defendants' motion to dismiss is GRANTED IN PART WITHOUT LEAVE TO AMEND and DENIED IN PART. The motion to strike is DENIED.

## I. REQUESTS FOR JUDICIAL NOTICE

As a preliminary matter, Defendants have filed a Request for Judicial Notice ("RJN") asking that the Court take notice of a September 21, 2004 Net Lease entered into between Plaintiff JGX, Inc. (as Tenant) and Defendant Handlery Hotels, Inc. (as Landlord). *See* ECF 42-1 ("Def. RJN"). Defendants argue that the lease is incorporated by reference into the FAC at paragraphs 10, 14, 26, 29 and 54. *Id*. Plaintiffs do not explicitly oppose the request, but argue that Defendants' citation to the lease is "not only outside the four corners of the FAC, it is objectively misleading." Opp'n to MTD at 6, ECF 44. Plaintiffs have also filed a request for judicial notice of an Order to Show Cause Re Preliminary Injunction and Temporary Restraining Order ("TRO") Against Defendant JGX, Inc., entered on January 20, 2017, in the Superior Court of the State of California, County of San Francisco, in the matter of *Handlery Hotels, Inc., v. JGX, Inc.*, Case No. CGC-17-556464. *See* ECF 44-1 ("Pltf. RJN"). Defendants do not oppose the request, but argue that the existence of the TRO does nothing to advance Plaintiffs' arguments. *See* Reply iso MTD at 3, ECF 47.

Grants of judicial notice are a matter of judicial discretion. *See United States v. Nat. Med. Enters., Inc.*, 792 F.2d 906, 912 (9th Cir. 1994). The Court may take judicial notice of documents referenced in the complaint, as well as matters in the public record. *See Lee v. City of L.A.*, 250 F.3d 668, 688–89 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*,

1  307 F.3d 1119, 1125–26 (9th Cir. 2002); *see also Barron v. Reich,* 13 F.3d 1370, 1377 (9th Cir.
2  1994); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988). In addition, the Court
3  may take judicial notice of matters that are either "generally known within the trial court's
4  territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy
5  cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records, including judgments and
6  other court documents, are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482
7  F.3d 1035, 1041 (9th Cir. 2007).

8  Defendants' RJN Exhibit A, the lease between the parties, shall be considered because it is
9  incorporated by reference into the FAC and is therefore properly subject to judicial notice. *See*
10 *Knievel v. ESPN,* 393 F.3d 1068, 1076 (2005). The Court also takes judicial notice of Exhibit A to
11 Plaintiffs' RJN, the state court TRO, as it is a court document that constitutes a public record.
12 *Black*, 482 F.3d at 1041. Accordingly, the Court GRANTS the requests for judicial notice as to
13 both exhibits.

## II. MOTION TO DISMISS

### A. Legal Standard

16 "A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a
17 claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation*
18 *Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d
19 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts
20 as true all well-pled factual allegations and construes them in the light most favorable to the
21 plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the
22 Court need not "accept as true allegations that contradict matters properly subject to judicial
23 notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or
24 unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)
25 (internal quotation marks and citations omitted). While a complaint need not contain detailed
26 factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to
27 relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*
28 *Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the

3

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986). However, under the "incorporation by reference" doctrine, the Court also may consider documents which are referenced extensively in the complaint and which are accepted by all parties as authentic. *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999), *abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

**B.     Discussion**

The FAC reasserts five causes of action against the four defendants for state and federal trademark infringement and dilution, and unfair competition. *See generally* FAC. Defendants move to dismiss the claims in the FAC on the same grounds that they successfully moved to dismiss the original complaint: (1) that Plaintiffs have failed to allege actual or imminent use of the LEFTY O'DOUL'S mark by Defendants; and (2) that the FAC does not support claims against Defendants Jon Handlery, Sam Singer, and Singer Associates, Inc. *See generally* MTD. The Court addresses each argument in turn.

**i.     Actual or Imminent Use**

In order to allege trademark infringement or dilution, a plaintiff must allege use of the allegedly infringing mark in commerce by the defendant. *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 676 (9th Cir. 2005) ("The Supreme Court has made it clear that trademark infringement law prevents only unauthorized uses of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers."). Similarly, a claim for unfair competition under California's Unfair Competition Law ("UCL") requires a "misleading or deceptive use." *Los Defensores, Inc. v. Gomez*, 223 Cal.App. 4th 377 (Ct. App. 2014). A plaintiff's claims may be "unripe" if they rest on anticipated future trademark infringement, in the absence of an imminent threat of use of the mark. *See, e.g.*, *Gerson Inst. v. Huntington*, 2011 U.S. Dist. LEXIS 25403 *3 (S.D. Cal. 2011) ("Any claims arising from [defendant's] anticipated future infringement would be unripe in the absence of any imminent threat."); *accord Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1133 (9th Cir. 2015) (affirming

4

the district court's dismissal of the complaint because plaintiff did not allege "actual or imminent infringement.") (quoting *Swedlow, Inc. v. Rohm & Haas Co.*, 455 F.2d 884, 886 (9th Cir. 1972)).

In dismissing Plaintiffs' original complaint, the Court held that Plaintiffs failed to plausibly allege actual or imminent use of the LEFTY O'DOUL'S mark by Defendants. *See* ECF 34. The Court granted Plaintiffs leave to amend, and indicated that some of Plaintiffs' representations in their briefing and at the hearing—although not alleged in the original complaint—could bolster their claims. *Id*. at 3-4. Those allegations included Plaintiffs' contention that Defendants used a sign bearing the LEFTY O'DOUL'S mark after the expiration of Plaintiffs' lease, and a contention that Plaintiffs lost licensing and franchising deals and were unable to lease a new space for the LEFTY O'DOUL'S restaurant. *Id*. The FAC adds these allegations, and the Court finds the amendments are sufficient to remedy the previously identified deficiencies.

For example, Plaintiffs now allege that Defendants "left up signs and menus depicting Plaintiffs' trademark on the façade of 333 Geary Street *after* Plaintiffs vacated the premises, resulting in Plaintiffs' actual loss of new business opportunities." FAC ¶ 13.[1] Moreover, Plaintiffs allege that "[t]his includes the loss of licensing and franchising deals and the termination of at least two letters of intent by San Francisco landlords who refused to lease space to Plaintiffs for a new LEFTY O'DOUL'S restaurant and bar until ownership of the trademark is finally determined." *Id*. Plaintiffs' factual allegations regarding the lost opportunities and revenues are extremely detailed, explaining that Plaintiffs have lost third party licensing and franchising deals in Japan, China, Panama, and the Bay Area. *Id*. ¶¶ 58-63. Plaintiffs allege that they have lost millions of dollars in revenues due to their inability to finalize their lease and re-open Lefty O'Doul's at another location, not to mention the hundreds of thousands of dollars for each lost licensing and franchise opportunity. *Id*.

Defendants argue that the Court should not credit Plaintiffs' allegation in the FAC that the

---

[1] Plaintiffs further allege that leaving up the sign on the entryway doors was "intentional" conduct by Defendants in order to "broadcast to the world that Defendants operated or would imminently operate a restaurant and bar under the trademark LEFTY O'DOUL'S." FAC ¶¶ 14, 53.

5

LEFTY O'DOUL'S sign and menus were left up after the expiration of the lease because the lease required Plaintiffs, not Defendants, to remove the signs and menus from the location. *See* MTD at 42; *see also* Def. RJN Exh. A. However, Plaintiffs persuasively point out that in light of a state court temporary restraining order ("TRO") secured by Defendants that was in place at the time the lease expired, Plaintiffs were actually enjoined from removing any property from the location, including the sign on the awning and exterior menus. *See* Opp'n to MTD at 7; *see also* Pltf. RJN Exh. A. At the pleading stage, the Court accepts as true Plaintiffs' allegation that Defendants deliberately left up the LEFTY O'DOUL'S sign and external menus as an indication to the market that Defendants would re-open a restaurant in that location under the same name.

The FAC also adds an additional statement by Defendant Singer made on January 12, 2017 which appears to be an expanded version of a statement previously alleged in the original complaint. The statement now provides in full that:

> **Lefty O'Doul's isn't moving anywhere. The lounge and restaurant will remain at 333 Geary St. with all its memorabilia, baseball bat chairs, and new and improved food and management.**
>
> **A bit of history regarding Lefty O'Doul's bar and restaurant: The Handlerys leased the bar and restaurant to the legendary Lefty O'Doul and his partner in 1958. A succession of managers have operated the establishment over its almost 60 years of business. The most current manager of the establishment is Nick Bovis and his partners, who have been the tenants/leasee for approximately 10 years. Their lease ends Feb. 3 and they have publically [sic] pledged to move out on that date.**
>
> **We wish Mr. Bovis much success elsewhere in his future restaurant endeavors.**
>
> **The Lefty O'Doul bar and restaurant property, its memorabilia, and the interior contents (with the exception of its staff and big screen TVs) are all the property of the Handlerys and will remain with them.**
>
> After the restaurant closes Feb. 3, a renovation and refurbishment will begin. The memorabilia and interior of property will be part of the establishment in its new form.
>
> We don't have a grand re-opening date yet, but rest assured that Lefty's will reopen under new and improved management in the same location at 333 Geary as part of the Handlery Hotel family of properties.

FAC ¶ 54 (emphasis added to reflect newly pled allegations).

The Court previously held that Singer's statements alone were insufficient to allege imminent use of the LEFTY O'DOUL'S mark. *See* ECF 34. However, the allegations now make

clear that Defendants informed the market that Lefty O'Doul's "isn't moving anywhere" and "will remain" at the same location under Handlery's management, as opposed to reopening under Bovis' management "elsewhere." FAC ¶ 54. These public statements, combined with Plaintiffs' allegations that Defendants left up signage and menus after the lease expired, and the extensive loss of revenues resulting from these statements, are sufficient to allege imminent and impending use of the mark. As the Court explained at the hearing, it is reasonable to infer from Plaintiffs' allegations that the market deemed Defendants' use of LEFTY O'DOUL'S to be imminent, and refused to collaborate with Plaintiffs as a result.

The Court is not convinced that Plaintiffs have alleged *actual* use of the LEFTY O'DOUL'S mark, as there is no dispute that Defendants have not actually operated the restaurant. However, the Court finds that the FAC adequately alleges a threat of imminent use and thus the claims are ripe for adjudication. The law does not require the Court to wait until Defendants physically re-open their doors. *See, e.g.*, *Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328, 1335 (E.D. Mo. 1996) (finding that trademark infringement claim against a defendant's not-yet operational Internet service was "not necessarily premature . . . even before [the] defendant actually opens the business, so long as the acts of the defendant are imminent and impending"); *Nova Wines, Inc. v. Adler Fels Winery LLC*, 467 F. Supp. 2d 965, 972 (C.D. Cal. 2006) (enjoining sale of products pursuant to trade dress infringement and unfair competition claims where accused products had not yet been sold in commerce).

Defendants attempt to distinguish *Nova Wines*, arguing that unlike the defendants in that case, Handlery Hotels is not on the "precipice" of infringing conduct sufficient to infer imminent use. *See* Reply iso MTD at 5. In *Nova Wines*, a plaintiff winery moved for a preliminary injunction, alleging that the defendants were on the verge of selling but had not yet sold bottles of wine allegedly infringing the plaintiff's trade dress rights. 467 F. Supp. 2d at 970-71. The plaintiff alleged that the defendants had already begun marketing the allegedly infringing wine, and had solicited pre-orders of thousands of bottles. *Id*. at 972. The court granted the motion for a preliminary injunction in light of this imminent infringement, even though the defendants had not actually begun selling the wine. *Id*. at 985.

7

As this Court explained at the hearing, the vacant restaurant on Union Square is not unlike the bottles of wine waiting to be shipped out. Plaintiffs have alleged that Handlery and Handlery Hotels marketed the "new" Lefty O'Doul's restaurant to potential customers, and left the sign up on the awning after Plaintiffs vacated the premises, such that the market was confused by who owns the rights to the mark. Even if the building is currently boarded up and the sign covered, the alleged infringement is just as imminent as it was in *Nova Wines* before the wine had shipped. Defendants concede that they believe they have rights to the LEFTY O'DOUL'S mark and that they may use it, but that such use is "at the very earliest, months away." Reply iso MTD at 5. The fact that the plaintiff in *Nova Wines* had less notice of the imminent infringement than Plaintiffs do here does not warrant dismissal of the FAC as unripe. Defendants' argument that use is not imminent because it has not yet reopened is also disingenuous in light of the stipulation entered into between the parties barring Defendants from using the LEFTY O'DOUL'S mark or any similar mark during the pendency of this action. *See* ECF 16.

For the foregoing reasons, as well as those stated on the record at the February 1, 2018 hearing, Defendants' motion to dismiss the FAC for failure to allege imminent use of the LEFTY O'DOUL'S mark is DENIED.[2]

### ii. Claims Against Handlery, Singer and Singer Associates

The Court previously dismissed the claims against Jon Handlery, Sam Singer, and Singer Associates, Inc. in their individual capacities, finding that these Defendants were not on notice of the claims against them and the acts that expose them to liability. *See* ECF 34. The Court instructed that in order for their claims against these Defendants to proceed, Plaintiffs must allege facts regarding misconduct attributable to these Defendants in their individual capacities rather than in their capacities as representatives of Handlery Hotels. *Id.* at 3.

The FAC now adequately alleges imminent use of the LEFTY O'DOUL'S mark by Jon Handlery in his individual capacity. As the owner of Handlery Hotels, Plaintiffs have stated a plausible claim that Handlery himself can cause or influence the use of the mark by his company.

---

[2] As such, Defendants' motion to dismiss the unfair competition claim because it is based on inadequately pled trademark claims is also DENIED.

8

For example, the Court can infer that Handlery personally made or approved the decision to leave up the LEFTY O'DOUL'S sign and menus on the entryway to the building after Plaintiffs' lease expired. FAC ¶¶ 14, 53. Plaintiffs have also added allegations to the FAC regarding the history between the Handlery family and the Bovis family that highlights Handlery's ownership and control of Handlery Hotels. *See* FAC ¶¶ 44-50. For example, the FAC alleges that Handlery "took over landlord responsibilities" for two properties that the Bovis family leased from Handlery Hotels, including the Union Square address where Lefty O'Doul's operated. *Id*. ¶ 44. The FAC goes on to detail Jon Handlery's attempt to "malign Plaintiffs" by leaking a false story that Bovis was hiding bags of children's toys around the holidays, cheating children in need out of their presents. *Id*. ¶¶ 45-48. Plaintiffs further allege that Handlery wrongly accused them of causing a fire at Lefty O'Doul's. *Id*. ¶ 50. These allegations, addressed further below in connection with Defendants' motion to strike, support the inference that Jon Handlery controlled Handlery Hotels and can be held personally liable for the alleged infringement, dilution and unfair competition. For these reasons, Defendants' motion to dismiss the claims in the FAC against Jon Handlery is DENIED.

On the other hand, Plaintiffs' renewed attempt to cast Sam Singer and Singer Associates as Handlery's "mouthpiece" to communicate trademark infringement remains unavailing. Plaintiffs do not allege that Singer or his company have any ownership interest in Handlery Hotels, or could have caused any of the alleged infringement. All of the allegations against Singer and Singer Associates are statements made on behalf of Handlery Hotels or Jon Handlery, and are not plausibly attributed to Singer or Singer Associates in their individual capacities. *See, e.g.*, FAC ¶ 54 (alleging that Handlery Hotels and Jon Handlery, *through* Singer and Singer Associates, released a "Statement from Handlery Family, the Owners of Lefty O'Doul's").

At the hearing on Defendants' motion to dismiss, Plaintiffs requested that any dismissal of Sam Singer and Singer Associates be without prejudice and subject to discovery, in case Plaintiffs discover facts suggesting that Singer has an ownership interest in Handlery Hotels. Based on the absence of any allegations in the FAC suggesting an ownership interest, the Court finds that there is no basis to delay dismissal of these claims on the merits. In fact, the FAC makes clear that

9

Singer and Singer Associates consistently acted as "agents" of Handlery Hotels and Jon Handlery, even if their actions were motivated by alleged personal animus toward the Bovis family. *See* FAC ¶¶ 10, 11, 21, 22, 47, 54, 55. Plaintiffs have now twice failed to allege facts that Sam Singer or Singer Associates are using, or imminently will use, the LEFTY O'DOUL'S mark. Accordingly, Defendants' motion to dismiss the claims in the FAC against Singer and Singer Associates is GRANTED WITHOUT LEAVE TO AMEND.

### III. MOTION TO STRIKE

#### A. Legal Standard

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a motion under this rule is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993) *rev'd on other grounds,* 510 U.S. 517 (1994). The Ninth Circuit has defined "immaterial" matter as "that which has no essential or important relationship to the claim for relief or the defenses being pleaded" and "impertinent" matter as "statements that do not pertain, and are not necessary, to the issues in question." *Id.* (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382, at 706–07, 711 (1990)). Furthermore, "[s]uperfluous historical allegations are a proper subject of a motion to strike." *Id.* The decision to strike a portion of a party's pleading is within the sound discretion of the court. *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir.2000).

#### B. Discussion

The FAC adds a number of new allegations, including seven paragraphs that highlight the personal animosity that is fueling this case. *See* FAC ¶¶ 44-50. The allegations refer to the history of the landlord-tenant relationship between the Handlery family and the Bovis family, and recount several instances of alleged schemes by Jon Handlery designed to publicly "malign Plaintiffs' good name." *Id*. ¶ 48. Defendants have moved to strike these seven paragraphs pursuant to Rule 12(f), arguing that these historical grievances are irrelevant because they "have absolutely nothing to do with trademark infringement or intellectual property rights." Mot. to Strike at 2. Because

intent is not a required element of any of the claims alleged, Defendants argue that whether Jon Handlery loved or hated Plaintiffs is completely irrelevant to the issues in this case and opens Defendants up to unnecessary discovery.

As stated on the record at the February 1, 2018 hearing, Defendants' motion to strike is DENIED. Although the Court agrees that the allegations are petty and largely unnecessary, the history of the parties' relationship is marginally relevant to Jon Handlery's personal liability, discussed above. Moreover, the allegations can hardly be considered "scandalous" in light of the public nature of the ongoing dispute between these two families in the San Francisco community. As made clear at the hearing, the Court's decision not to strike this content at the pleading stage has no impact on whether it could ultimately be presented to a jury.

**IV. ORDER**

For the foregoing reasons, the Court ORDERS as follows:

(1) Defendants' motion to dismiss the claims in the FAC against Jon Handlery and Handlery Hotels is DENIED.

(2) Defendants' motion to dismiss the claims in the FAC against Sam Singer and Singer Associates is GRANTED WITHOUT LEAVE TO AMEND.

(3) Defendants' motion to strike paragraphs 44-50 of the FAC is DENIED.

(4) Defendants shall file an Answer to the FAC **on or before March 6, 2018.**

**IT IS SO ORDERED.**

Dated: February 20, 2018

_____
BETH LABSON FREEMAN
United States District Judge